UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X

MADELINE TORRES,

                              Plaintiff,

        -against-

UNITED STATES OF AMERICA and
LUTHERAN MEDICAL CENTER,

                          Defendants.

-------------------------------------------------------------------X

**MEMORANDUM & ORDER**

**12-CV-6011 (NGG) (RLM)**

NICHOLAS G. GARAUFIS, United States District Judge.

      Before the court is Defendant United States of America's (the "Government" or "United States") motion to dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1). (Not. of Mot. to Dismiss (Dkt. 28).) Plaintiff Madeline Torres ("Plaintiff" or "Torres") brings this medical malpractice action against the United States and a non-federal defendant, the Lutheran Medical Center ("Lutheran"), pursuant to the Federal Tort Claims Act ("FTCA"), alleging that Defendants are liable for her treating physician's failure to timely diagnose and treat her ulcerative colitis, thereby resulting in grave and lasting injury to her person. The Government now moves to dismiss the Complaint as it relates to the United States on the grounds that the court lacks jurisdiction over Plaintiff's claim because she failed to timely exhaust her administrative remedies as required by the FTCA. Lutheran has not joined in the motion.

      For the reasons set forth below, the Government's motion is GRANTED.

## I.    BACKGROUND

### A.    Factual Background

As the outcome of the Government's motion turns in large part on when Plaintiff's cause

of action accrued under the FTCA, a fulsome recitation of Plaintiff's medical history and the treatment she received while in the care of Defendants is necessary for the court to render a decision.

On December 16, 2008, Plaintiff visited the Shore Road Family Health Center ("Shore Road") for an initial prenatal examination, which was performed by Dr. Irina Karban. (Mem. of Law in Supp. of Mot. to Dismiss ("Gov't Mot") (Dkt. 29) at 3; Gov't Ex. A (Dec. 16, 2008, Shore Road Record).)[1] An ultrasound performed that day showed Plaintiff to be nine weeks pregnant, and Dr. Karban ordered prenatal laboratory testing and started Plaintiff on prenatal vitamins. (Gov't Ex. B (Dec. 12, 2008, Narrative Summary).) Plaintiff was scheduled for a follow-up visit in four weeks' time. (Gov't Ex. A.)

At her follow-up visit with Dr. Karban at Shore Road on January 12, 2009, Torres was diagnosed with anemia. (Gov't Ex. B; Gov't Ex. D (Jan. 12, 2009, Shore Road Record).) Dr. Karban ordered additional bloodwork to be done relating to Plaintiff's anemia and told her to begin taking an iron supplement and Colace capsules, a stool softener. (Id.; Gov't Ex. B.) According to Dr. Karban's summary of her treatment of Plaintiff, she scheduled a follow-up visit for Torres for three weeks from that visit. (Id.)

On January 26, 2009, Plaintiff returned to Shore Road complaining of decreased appetite, constipation, abdominal pain, and at least one episode of rectal bleeding beginning one week prior to her visit. (Gov't Ex. B; Gov't Ex. E (Jan. 26, 2009, Shore Road Record).) In addition to Dr. Karban, Torres was examined by an internist, Dr. Polina Tavrovskaya. Additional laboratory testing was ordered and Plaintiff was transferred to Lutheran's Labor and Delivery ("L&D") department. (Gov't Ex. E; Gov't Ex. F (Jan. 26, 2009, Lutheran L&D Record).) Torres received

---

[1] Citations in the form "Gov't Ex. __" refer to the exhibits attached to the Declaration of Assistant United Sates Attorney Timothy D. Lynch, dated Sept. 9, 2013. (Dkt. 30.)

intravenous fluids at Lutheran and was observed overnight. (Gov't Ex. G (Jan. 26, 2009, Lutheran Progress Notes).) During the night of February 26, Plaintiff complained of continued abdominal pain and suffered several bouts of vomiting (id.), though she was allowed to return home the next morning. (Id.; see also Gov't Mot. at 4.)

Two days later, on January 29, 2009, Plaintiff returned to Lutheran complaining of bloody diarrhea (approximately 10-15 episodes that day), which had been preceded by a period of decreased appetite and constipation. (Gov't Ex. H (Lutheran Discharge Summary).) She was thereafter admitted to the hospital and diagnosed with a lower gastrointestinal or "GI" bleed. (Id. at 2.) The next day, January 30, 2009, Torres underwent further diagnostics and was found to have severe colitis, likely due to inflammatory bowel disease or ulcerative colitis,[2] and a biopsy was taken. (Id.) At approximately 1:00 a.m. on January 31, 2009, Torres' blood pressure reportedly dropped, she developed shortness of breath, and her heart rate spiked. (Id. (reporting that Torres "became hypotensive, techypneic and tachycardic").) A Code RRT, or rapid response team, was called and the Lutheran staff administered cardiopulmonary resuscitation ("CPR"). (Id.; see also Gov't Mot. at 5; Pl. Opp'n at 2.) Plaintiff's doctors ordered a computed tomography ("CT") scan of Torres's chest, which showed large bilateral pulmonary embolisms. (Gov't Ex. H.) The same day, Torres underwent surgery to place a filter in her inferior vena cava to prevent additional pulmonary embolisms. (Gov't Ex. J (Jan. 31, 2009, OP Report).) Plaintiff was then moved to Lutheran's Medical ICU, where she would remain for the next three days. (Gov't Ex. H.) During that period she continued to suffer between 8-10 episodes of bloody stool per day and required at least three additional blood transfusions. (Id.)

---

[2] Ulcerative colitis "is an inflammatory bowel disease (IBD) that causes long-lasting inflammation and ulcers (sores) in your digestive tract," which "can be debilitating and sometimes . . . lead to life-threatening complications." See Mayo Clinic, Ulcerative Colitis, Definition, http://www.mayoclinic.org/diseases-conditions/ulcerative-colitis/basics/definition/con-20043763 (last visited Sept. 22, 2014).

The following day, February 1, 2009, a physician at Lutheran, Dr. Vishal Ghevariya, met with Plaintiff to discuss her diagnosis of ulcerative colitis, her prognosis, and the recommended treatment course, along with associated risks and benefits. (Gov't Ex. K (Feb. 1, 2009, Lutheran Progress Notes).) Among the treatment courses mentioned by Dr. Ghevariya was a surgical procedure called a colectomy, whereby a portion of the patient's colon is removed. (Id.; see also Gov't Mot. at 6 n.7.) According to Dr. Ghevariya's notes, Plaintiff's mother and fiancé participated in the conversation and Plaintiff herself appeared to understand the conversation. (Id.)

On February 2, 2009, Plaintiff was transferred from Lutheran to Mt. Sinai Hospital for further treatment of her ulcerative colitis. (Gov't Ex. L (Mar. 18, 2009, Mt. Sinai Medical Record).) Though Plaintiff received no further treatment by Dr. Karban or any other Lutheran physician after this date, her treatment for ulcerative colitis continued. On February 4, 2009, Plaintiff underwent a combined colectomy and ileostomy to treat her condition. (Id.; Gov't Ex. M (Feb. 11, 2009, Mt. Sinai Surgical Report).) Two days later, on February 6, 2009, Plaintiff again underwent surgery to remove the blockages in her pulmonary arteries, and at the same time doctors removed a mass from the right ventricle of her heart and performed a valve repair. (Id.) She was taken off ventilation, or "extubated," the following day, but was reintubated on February 14, 2009, as her condition continued to decline. (Gov't Ex. L.) On February 15, 2009, Ms. Torres went into cardiac arrest but doctors at Mt. Sinai were able to resuscitate her. (Id.) She was again taken off a respirator on February 21, 2009, and remained at Mt. Sinai until she was discharged to Mt. Sinai's inpatient rehabilitation facility on March 3, 2009. (Id.; Gov't Ex.

N (Mar. 17, 2009, Mt. Sinai Rehab. Record).) Plaintiff remained in the care of the doctors at Mt. Sinai until she was ultimately discharged on March 17, 2009. (Id.)[3]

## B. Procedural History

On February 25, 2011, Plaintiff filed suit against Dr. Karban, Lutheran, Shore Road, and several other parties in the Supreme Court of the State of New York, Kings County, asserting a claim of medical malpractice regarding her treatment by Defendants. See Torres v. Karban, Index No. 4476/2011 (N.Y. Sup Ct. filed Feb. 25, 2011) (Gov't Ex. S). The United States removed that action to this court on July 27, 2011, arguing that Dr. Karban and Shore Road were federally deemed employees acting within the scope of their employment during the events at issue. See Not. of Removal, Torres v. Karban, No. 11-CV-3632 (E.D.N.Y. July 27, 2011) ("Torres I") (Dkt. 1). On August 3, 2011, pursuant to a stipulation of dismissal, Plaintiff's claims against the United States were dismissed for failure to properly exhaust available administrative remedies as required by 28 U.S.C. § 2675. See Stip. of Dismissal, Torres I (E.D.N.Y. Aug. 3, 2011) (Dkt. 5).

On or about October 4, 2011, Plaintiff filed an administrative tort claim under the FTCA with the U.S. Department of Health and Human Services ("HHS"). (Gov't Ex. U (June 18, 2012, HHS Ltr.).) Plaintiff's administrative complaint was predicated on the assertion that Defendants "failed to timely diagnose and treat plaintiff's ulcerative colitis," which allowed her condition to deteriorate to the point where she was required to undergo multiple invasive surgeries. (Gov't Ex. T (Administrative Compl.).) On June 18, 2012, HHS informed Plaintiff that it had denied her claim. (Gov't Ex. U.)

---

[3] On September 14, 2009, Plaintiff returned to Mt. Sinai to undergo an additional surgical procedure and was discharged on September 30, 2009. (Gov't Ex. P (Oct. 1, 2009, Mt. Sinai Record).)

Finally, on December 5, 2012, Plaintiff filed the instant Complaint against the United States and Lutheran. (Compl. (Dkt. 1).)

## II. LEGAL STANDARD

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000) (citing Fed. R. Civ. P. 12(b)(1)). While the party invoking the court's jurisdiction has the ultimate burden of proving such jurisdiction lies, see Malik v. Meissner, 82 F.3d 560, 562 (2d Cir. 1996); Makarova, 201 F.3d at 113, the court generally is required to accept the truth of all material factual allegations in the Complaint, see Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd., 968 F.2d 196, 198 (2d Cir. 1992). In considering a motion to dismiss for lack of subject matter jurisdiction, however, the court may rely on evidence outside the pleadings, such as affidavits and documentary evidence. See Luckett v. Bure, 290 F.3d 493, 496-97 (2d Cir. 2002); Makarova, 2010 F.3d at 113; LeBlanc v. Cleveland, 198 F.3d 353, 356 (2d Cir. 1999) ("[W]here jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits.").

## III. DISCUSSION

The Government moves to dismiss Plaintiff's claim on the grounds that she failed to timely file her administrative complaint with HHS, and that her claim is thus time-barred. (Gov't Mot. at 5, 12-20.) The FTCA requires that a plaintiff exhaust all administrative remedies prior to filing suit in federal court. See 28 U.S.C. § 2675(a). Because the FTCA operates to waive the United States' sovereign immunity as to certain classes of tort claims, the exhaustion "requirement is jurisdictional and cannot be waived." Celestine v. Mt. Vernon Neighborhood

Health Ctr., 403 F.3d 76, 80-82 (2d Cir. 2005); see also United States v. Kubrick, 444 U.S. 111, 117-18 (1979). To properly exhaust available administrative remedies under the FTCA, a plaintiff must submit her claim to the appropriate federal agency "within two years after the claim accrues." 28 U.S.C. § 2675(a); see also Millares Guiraldes de Tineo v. United States, 137 F.3d 715, 720 (2d Cir. 1998) (noting "the United States has not consented to be sued on a tort claim unless the claim was first presented to the appropriate federal agency . . . within two years after the claim accrued"); Urena v. Wolfson, No. 09-CV-1107 (KAM), 2010 WL 5057208, at *11 (E.D.N.Y. Dec. 6, 2010) ("[T]he FTCA provides a two-year statute of limitations for presenting an administrative claim against the United States.). For the purposes of this Memorandum and Order, the court will refer to this two-year period for presenting one's claim to the appropriate federal agency as a statute of limitations.[4]

Accordingly, because Plaintiff filed her state court action on February 25, 2011, by operation of the Westfall Act, 28 U.S.C. § 2679(d)(5)(B),[5] she will be deemed to have timely filed her administrative claim if her claim accrued on or after February 25, 2009. Should the court determine that Plaintiff's claim accrued before that date, the Government's motion must be granted unless equitable tolling is found to apply.

---

[4] For the sake of clarity, this two-year limitations period should be distinguished from a second limitations requirement in the FTCA, which requires that plaintiffs initiate their suit in federal court within six months of the date of mailing of the relevant federal agency's final denial of their claim. See 28 U.S.C. § 2401(b). This six-month limitations period is not at issue here.

[5] Under the Westfall Act, a plaintiff who brings suit in state court against a federal employee before exhausting her administrative remedies is afforded a limited opportunity after removal to federal court to comply with the FTCA's exhaustion requirements. See 28 U.S.C. § 2679(d)(5). However, because Plaintiff's cause of action accrued on or before February 1, 2009, as discussed below, the FTCA's two-year limitations period had already expired by the time Plaintiff filed her state court action on February 25, 2011. The Westfall Act cannot save Plaintiff's claim because it would not "have been timely had it been filed [with the appropriate federal agency] on the date the underlying civil action was commenced." Id. § 2679(d)(5)(A).

## A. Date of Accrual

Though the United States' liability under the FTCA is governed by state law, "[f]ederal law determines the date that an FTCA claim accrues." A.Q.C. ex rel. Castillo v. United States, 656 F.3d 135, 139 (2d Cir. 2011). As a general matter, under the FTCA a tort claim accrues "at the time of injury." Kronisch v. United States, 150 F.3d 112, 121 (2d Cir. 1998); see also Barrett v. United States, 689 F.2d 324, 327 (2d Cir. 1982) ("It has generally been held that under the FTCA a tort claim accrues at the time of the plaintiff's injury."). However, courts have applied the so-called "diligence-discovery rule" of accrual when "a plaintiff 'would reasonably have had difficulty discerning the fact or cause of injury at the time it was inflicted.'" A.Q.C., 656 F.3d at 139-40 (quoting Kronisch, 150 F.3d at 121). Thus, particularly in medical malpractice cases, "accrual may be postponed until the plaintiff has or with reasonable diligence should have discovered the critical facts of both his injury and its cause." Kronisch, 150 F.3d at 121; see also Valdez ex rel. Donely v. United States, 518 F.3d 173, 177 (2d Cir. 2008); Williams v. United States, No. 03-CV-9909 (GEL), 2007 WL 951382, at *6 (S.D.N.Y. Mar. 22, 2007) (noting that a FTCA medical malpractice claim accrues "when plaintiff knows or should know, through the exercise of reasonable diligence, of the fact and cause of her injury, thereby giving rise to a duty to inquire"). This not an "'exacting requirement,'" however, and a claim will be found to have accrued when the plaintiff knows, or should know, that "the injury suffered related in some way to the medical treatment . . . received." A.Q.C., 656 F.3d at 140 (quoting Kronisch, 150 F.3d at 121); Phillips v. Generations Family Health Ctr., 529 F. App'x 14, 16 (2d Cir. 2013); see also A.Q.C., 656 F.3d at 142 ("[A] claim accrues when the plaintiff knows, or should know, enough 'to protect himself by seeking legal advice.'" (citation omitted)).[6]

---

[6] Despite implicitly acknowledging in its opening brief that the diligence-discovery rule likely governed accrual of Plaintiff's cause of action (see Gov't Mot. at 13-14), the United States strenuously contends in its reply that the

In the present case, the Government contends that Plaintiff's medical malpractice claims accrued no later than February 1, 2009, the date on which Plaintiff was purportedly informed of her diagnosis by Dr. Ghevariya, a physician at Lutheran. (Gov't Mot. at 13-14.) They reason that "Plaintiff was aware of the injury at issue, *to wit*, the ulcerative colitis, no later than February 1, 2009," and that neither Dr. Karban nor any other federally deemed employee was involved in her treatment following her transfer to Mt. Sinai the following day. (Id. (emphasis in original).) For her part, Plaintiff protests that her cause of action did not accrue until April 2009, appearing to rely on affidavits she and her mother filed in opposition to the instant motion attesting to the fact that Plaintiff did not actually consider whether Dr. Karban had committed malpractice until that time. (See Pl. Opp'n at 9; see also Decl. of John T. Wisell, Exs. A & B (Dkt. 30).) Torres flatly denies being aware of her injury or its cause on or about February 1, 2009—though she admits learning of her diagnosis, prognosis, and course of treatment on that date (Pl. Opp'n at 4)—and argues that her claim should not be found to have accrued during a period when her medical condition was so volatile (id. at 4-7). The court disagrees, and for the reasons set forth below concludes that Plaintiff's claim accrued no later than February 1, 2009.

First, it is apparent from Plaintiff's pleading and medical records that she was aware of the existence of her injury on or before February 1, 2009. Torres alleges that Dr. Karban's failure to diagnose or appreciate the severity of her ulcerative colitis at her January 26, 2009, examination, as well as Dr. Karban's resulting failure to initiate appropriate treatment on that date, caused Plaintiff physical harms she would not have otherwise sustained. (See Compl. ¶¶ 20, 22.) But the injury underlying this action is not, as the Government contends, the

---

FTCA's standard rule of accrual should govern the court's consideration of the instant motion (see Reply Mem. of Law ("Gov't Reply") (Dkt. 32) at 2-6). Because the court finds Plaintiff's FTCA claim is time-barred under the more lenient diligence-discovery rule, the court need not resolve whether the more restrictive rule should be applied instead; the result is the same regardless.

ulcerative colitis itself.[7] Rather, read in the light most favorable to the Plaintiff, the relevant injury is the progression of Plaintiff's condition during the six-day period between her January 26, 2009, visit to Dr. Karban and February 1, 2009,[8] as well as any deterioration in her medical condition or additional complications that resulted from the delayed diagnosis. See Williams v. United States, No. 03-CV-9909 (GEL), 2007 WL 951382 (S.D.N.Y. Mar. 22, 2007) (finding plaintiff's injury was not her cancer "but its 'growth' after the Bronx VA failed to diagnose it," which caused further medical complications (brackets omitted)); Neuenswander v. United States, 422 F. Supp. 2d 425, 433-34 (D. Vt. 2006) (accepting the parties' contention that in a failure to diagnose case the plaintiff's "injury is the deterioration of his medical condition").[9]

Torres plainly suffered a severe injury during the roughly six-day period during which her colitis went undiagnosed. From her release from the hospital on the morning of January 27, 2009, to her conversation with Dr. Ghevariya on February 1, 2009, Plaintiff experienced frequent

---

[7] Despite Plaintiff's apparent adoption of the Government's theory of injury in her opposition papers (see Pl. Opp'n at 4-5), the Complaint and simple logic dictate that Plaintiff's ulcerative colitis is not the injury at issue in this case. Because Plaintiff's claim is premised on Dr. Karban's failure to diagnose her ulcerative colitis on January 26, 2009, her theory of injury necessarily presupposes that the colitis existed as of that date and thus could have been diagnosed by a physician adhering to accepted medical practices. (See Compl. ¶¶ 18-19.) Based on the Complaint, therefore, Dr. Karban's alleged misconduct did not cause Plaintiff's underlying condition; rather, taking the allegations in the Complaint as true, Plaintiff alleges Dr. Karban's failure to diagnose her colitis allowed the disease to progress unchecked, causing her medical condition to deteriorate and leading to the additional complications discussed previously. Plaintiff appeared to recognize as much in her administrative claim, asserting as the basis of her claim to HHS that Dr. Karban's "fail[ure] to timely diagnose and treat plaintiff's ulcerative colitis . . . caused plaintiff's condition to deteriorate to the point where she required removal of her small intestine." (Gov't Ex. T.)

[8] While doctors discovered "severe colitis" in Plaintiff's colon on January 30, 2009 (see Gov't Ex. H), it is not clear whether her condition was formally diagnosed on that date, thus ending the "delay" caused by Dr. Karban's alleged malpractice (see id. (indicating a biopsy had been taken)). For the purposes of this motion, the court will resolve this ambiguity in Plaintiff's favor and assume that her condition was diagnosed the same day she was informed of it, on February 1, 2009. This two-day difference does not affect the court's decision on the instant motion, however.

[9] See also Hughes v. United States, 263 F.3d 272, 277 (3d Cir. 2001); Green v. United States, 765 F.2d 105, 109 (7th Cir. 1985) (finding that in failure to diagnose cases under the FTCA "it is only when the patient becomes aware or through the exercise of reasonable diligence should have become aware of the development of a pre-existing problem into a more serious condition that his cause of action can be said to have accrued for purposes of section 2401(b)"); Augustine v. United States, 704 F.2d 1074, 1078 (9th Cir. 1983) (holding that the progression of plaintiff's disease, rather than the disease itself, was the injury and that his cause of action did not accrue until a reasonable person should have "discovered that the failure of his doctors to diagnose, treat, or warn him led to his deteriorating physical condition").

and numerous bouts of bloody stool, she was diagnosed with both a GI bleed and bilateral pulmonary embolisms, she became "hypotensive, techypneic and tachycardic" and had to be resuscitated by the Lutheran physicians, and she underwent surgery to place an IVC filter. Thus, in the court's view, at the time of her discussion with Dr. Ghevariya on February 1, 2009, Plaintiff was aware that she had suffered serious injury. That Plaintiff was unaware of the full extent of the harm caused by Dr. Karban's purported failure to timely diagnose her colitis or of the fact that she would suffer further complications due to the same does not preclude the court from finding that her cause of action had accrued as of that date. See J.D. ex rel. Doe v. United States, No. 10-CV-4296 (DLC), 2011 WL 292010, at *8 (S.D.N.Y. Jan. 28, 2011), aff'd sub nom. Dominguez ex rel. Dominguez v. United States, 468 F. App'x 23 (2d Cir. 2012) ("'[P]laintiff need not know each and every relevant fact of his injury or even that the injury implicates a cognizable legal claim' for his claim to accrue."); Mendez v. United States, 655 F. Supp. 701, 705 (S.D.N.Y. 1987) ("To be aware of an injury [for purposes of determining accrual under the FTCA], plaintiff 'need not know the full extent of his or her injury.'" (citation omitted)); cf. Wallace v. Kato, 549 U.S. 384, 391 (2007) ("The cause of action accrues even though the full extent of the injury is not then known or predictable.").[10]

Second, following her conversation with Dr. Ghevariya on February 1, 2009, Plaintiff possessed the critical facts concerning the cause of her injury. Torres insists, however, that her claim did not accrue until April 2009 because that was when she first became aware that her

---

[10] See also Gonzalez v. United States, 284 F.3d 281, 289 (1st Cir. 2002) (finding "[t]he plaintiff need not know . . . the full extent of the injury" for a cause of action to accrue under the FTCA); Goodhand v. United States, 40 F.3d 209, 212 (7th Cir. 1994) ("The statute of limitations begins to run upon the discovery of the injury, even if the full extent of the injury is not discovered until much later."); id. at 213 (noting "to treat the complications of an injury as a new injury is pretty much to erase the rule that the plaintiff cannot wait to sue until he realizes the full extent of his injury"); L.C.H. ex rel. Hagan v. United States, No. 12-CV-916 (RLW), 2012 WL 6570685, at *6 (D.D.C. Dec. 14, 2012) ("The 'FTCA inquires as to *injury*—not as to diagnosis or full extent of injury. To be aware of an injury, a plaintiff need not know the full extent of his or her injury. The limitations period will run even though the ultimate damage is unknown or unpredictable.'" (citation omitted)).

medical issues from earlier in the year might have been caused by malpractice. (See Pl. Opp'n at

8-9.) But Plaintiff's subjective realization that her injury might be related to Dr. Karban's

treatment in January 2009 does not control the court's inquiry regarding accrual. The diligence-

discovery rule asks only whether Plaintiff has or with the exercise of reasonable diligence should

have "discovered the critical facts of both [her] injury and its cause," such that she knew enough

"to protect [herself] by seeking legal advice." Kronisch, 150 F.3d at 120-21 (internal citation

omitted); see also A.Q.C. ex rel. Castillo v. United States, 715 F. Supp. 2d 452, 458 (S.D.N.Y.

2010) aff'd, 656 F.3d 135 (2d Cir. 2011) ("Discovery of the 'critical facts' of injury and

causation requires 'knowledge of, *or knowledge that could lead to,* the basic facts of the injury,

i.e., knowledge of the injury's existence and knowledge of its cause or of the person or entity that

inflicted it.'" (citation omitted)); Williams, 2007 WL 951382, at *6 ("[T]he relevant inquiry is

not when plaintiff *actually* knew, but when she *should* have known, that Bronx VA had failed to

diagnose her cancer.").

Here, the court concludes that the "critical facts" regarding the cause of Torres' injury

were readily discernable and, in fact, already known to Plaintiff on or before February 1, 2009.

Following her discussion with Dr. Ghevariya on that date, Plaintiff knew that she had visited Dr.

Karban at Shore Road on January 26, 2009, complaining of decreased appetite, constipation,

abdominal pain, and at least one episode of rectal bleeding; that following her release from Shore

Road on the morning of January 27 her condition drastically deteriorated requiring further

hospitalization and surgeries; and, upon learning that she suffered from ulcerative colitis, that Dr.

Karban had failed to reach a similar diagnosis six days earlier. These are the same critical facts

from which Plaintiff would ultimately infer the cause of her injury. Indeed, nothing in the

Complaint or Plaintiff's opposition papers indicates that Torres acquired any additional

information concerning the alleged connection between her injury and Dr. Karban's treatment after February 1, 2009. (See, e.g., Decl. of John T. Wisell, Ex. A ("Pl. Aff.") at 2-3.) Considering the temporal proximity of her visit to Dr. Karban and her ultimate diagnosis on February 1, together with the similarity of symptoms that first brought Plaintiff to Dr. Karban on January 26 and that led to her ultimate diagnosis six days later, the court concludes that Plaintiff either knew or reasonably should have known the critical facts concerning the cause of her alleged injury—i.e., that it related to the medical treatment she received from Dr. Karban, or more precisely, the lack thereof.[11]

Plaintiff's arguments to the contrary are unavailing. Torres contends that her cause of action should not be found to have accrued on February 1 because Dr. Ghevariya did not expressly relate her diagnosis "back to medical treatment rendered by Dr. Karban or Dr. Karban's malpractice in failing to diagnose her condition." (Pl. Opp'n at 4-5 ("There is simply no evidence that plaintiff was advised, or had any idea, that Dr. Karban's malpractice resulted in her present medical condition.").) As an initial matter, the law does not require Plaintiff to have been expressly told of the potential link between her injury and the purported malpractice for her cause of action to accrue. See A.Q.C., 656 F.3d at 143 (the "key" to determining accrual "is identifying the time by which the plaintiff is 'told of *or has reason to suspect*' that 'the injury

---

[11] Plaintiff's reliance on Lee v. United States, 485 F. Supp. 883 (E.D.N.Y. 1980), is unavailing. In that case, the father of a brain-damaged six-year-old girl brought a medical malpractice claim against the United States alleging negligence on the part of Air Force doctors during the delivery and immediate post-birth care of his daughter in November 1973. The court rejected the Government's effort to secure dismissal under the FTCA's two-year limitations period in that case on the grounds that while Plaintiff knew in May 1975 that his daughter's injuries had been caused by fluid in her lungs at the time of her birth, he did not become aware until 1977 that the conduct of the doctors during her delivery had caused the fluid to accumulate in the first place. Id. at 886-87. The circumstances of Lee are not analogous to those here, as Plaintiff contends. Whereas in Lee the plaintiff was aware of the mechanism of injury but not its ultimate iatrogenic cause, here Torres was aware of the nature of her physician's conduct—i.e., Dr. Karban's failure to diagnose her condition earlier—on the accrual date proposed by the Government. Moreover, as the Government aptly notes, the probative value of Lee is limited by the fact that it was decided before many of the Second Circuit decisions that discuss the contours of the diligence-discovery rule. (Gov't Reply at 4-5.)

suffered related in some way to the medical treatment . . . received.'" (citing Valdez, 518 F.3d at 177, 180)); J.D., 2011 WL 292010, at *8 ("[P]laintiff's claim accrues once he has an obligation to seek information about whether the harm he suffered may relate to the medical treatment he received. A 'mere hunch, hint, suspicion, or rumor of a claim' may not be enough, 'but such suspicions do give rise to a duty to inquire into the possible existence of a claim in the exercise of due diligence.'" (citation omitted)). Moreover, Plaintiff herself acknowledges that none of her physicians at Shore Road, Lutheran, or Mt. Sinai ever suggested any wrongdoing by Dr. Karban (Pl. Aff. at 2-3); she arrived at the conclusion that the deterioration in her medical condition was attributable to Dr. Karban's failure to timely diagnose her colitis entirely on her own, and on the basis of the same facts she possessed on February 1, 2009.

*   *   *

For the foregoing reasons, the court finds that Plaintiff possessed the critical facts concerning both her injury and its cause on or before February 1, 2009, and that her medical malpractice claim accordingly accrued on or before that date. Plaintiff did not file her administrative claim until February 25, 2011, outside the two-year period provided by 28 U.S.C. § 2675(a). Therefore, unless equitable tolling is found to apply, Plaintiff has failed to properly exhaust her administrative remedies and her claims under the FTCA must be dismissed for want of subject matter jurisdiction.

**B.    Equitable Tolling**

In the event the court found Plaintiff's cause of action to have accrued before February 25, 2009, which it has, Plaintiff requests that the court equitably toll the FTCA's two-year limitations period from February 1 to March 19, 2009. (See Pl. Opp'n at 10.) Torres argues that her "dire medical condition justifiably triggers the equitable toll for when the claim accrues until

the disability was lifted . . . on March 19, 2009," the date she was released from Mt. Sinai. (Id.)

Thus, Plaintiff effectively asks that the court excuse her failure to timely present her administrative claim to HHS on account of her medical condition during the first 45 days of the limitations period. [12] (See Pl. Opp'n at 10.) The Government opposes equitable tolling, arguing that Plaintiff has not established that she was diligent in pursuing her claim during the two-year period following accrual of her cause of action. (Gov't Mot. at 16-20; Gov't Reply at 8-10.) The court agrees, and for the following reasons declines to equitably toll the FTCA's two-year limitations period in this case. [13]

Equitable tolling "allows courts to extend the statute of limitations beyond the time of expiration as necessary to avoid inequitable circumstances." Johnson v. Nyack Hosp., 86 F.3d 8, 12 (2d Cir. 1996). However, because "statutes of limitations 'protect important social interests in certainty, accuracy, and repose,' . . . equitable tolling is considered a drastic remedy applicable only in 'rare and exceptional circumstance[s].'" A.Q.C., 656 F.3d at 144 (citations omitted);

---

[12] Absent any allegation that the Government wrongfully concealed the existence of her claim, Plaintiff's request that the court apply the doctrine of equitable tolling to postpone accrual of her cause of action reflects a common, yet justified, misunderstanding of how the doctrine operates. As the Second Circuit explained in Valdez, "'[t]olling doctrines stop the statute of limitations from running even if the accrual date has passed.'" Valdez, 518 F.3d at 185 (quoting Cada v. Baxter Healthcare Corp., 920 F.2d 446, 450 (7th Cir. 1990) (Posner, J.)); Carrion v. Coca-Cola Bottling Co. of New England, No. 05-CV-1720 (JCH), 2006 WL 3526748 (D. Conn. Dec. 1, 2006) (noting that equitable tolling "appl[ies] only after a claim has accrued" (internal quotation marks and citation omitted)). Here, the court has already determined that Plaintiff's claim accrued on or before February 1, 2009, and that the FTCA's two year period for filing her administrative claim began to run on that date. By invoking the doctrine of equitable tolling, Plaintiff is in fact asking that the court suspend the statute of limitations clock for a 45-day period on account of her medical condition, thereby excusing her failure to present her claim to HHS within two years of her claim's accrual and allowing her to avoid application of the FTCA's statute of limitations bar. See Valdez, 518 F.3d at 182 ("Equitable tolling permits a plaintiff to avoid the bar of the statute of limitations 'if despite all due diligence he is unable to obtain vital information bearing on the existence of his claim.'" (citation omitted)); A.Q.C., 715 F. Supp. 2d at 461 (noting that "[e]quitable tolling 'allows courts to extend the statute of limitations beyond the time of expiration as necessary to avoid inequitable circumstances'" (citation omitted)).

[13] While "it is not clear that equitable tolling is available in medical malpractice actions brought pursuant to the FTCA" in this circuit, see Phillips v. Generations Family Health Ctr., 723 F.3d 144, 149 (2d Cir. 2013) ("Whether equitable tolling is available at all under the FTCA is an open question in this circuit."); A.Q.C., 656 F.3d at 144, this court need not wrestle with the issue in order to decide the instant motion. Even assuming for the purposes of this Memorandum and Order that the doctrine of equitable tolling could be applied in the present context, the court finds Plaintiff has not established that she is entitled to its application.

Zerilli-Edelglass v. N.Y.C. Transit Auth., 333 F.3d 74, 80 (2d Cir. 2003) (noting equitable

tolling is appropriate only "in rare and exceptional circumstances in which a party is prevented in

some extraordinary way from exercising his rights" (internal quotation marks, alterations, and

citation omitted)). As such, to invoke equitable tolling Plaintiff bears the burden to establish (1)

"that extraordinary circumstances prevented him from filing his claim on time," and (2) "that he

acted with reasonable diligence throughout the period he seeks to toll." Phillips v. Generations

Family Health Ctr., 723 F.3d 144, 150 (2d Cir. 2013) (internal quotation marks and brackets

omitted); see also Chapman v. Choice-Care Long Island Term Disability Plan, 288 F.3d 506, 512

(2d Cir. 2002) (noting burden lies with the party invoking the doctrine). Moreover, where the

"extraordinary circumstances" relied on by the party seeking the equitable toll cease early in the

limitations period—as is the case here, where Plaintiff seeks to toll only the period from

February 1 to March 19, 2009—the court must inquire into whether the plaintiff "diligently

pursued his [claim] in the time remaining." Hizbullahankhamon v. Walker, 255 F.3d 65, 75 (2d

Cir. 2001).

Plaintiff has not established that "rare and exceptional circumstances" justify tolling the

FTCA's two-year limitations period for the requested 45 days. Even if Torres's medical

condition between February 1 and March 19, 2009, demonstrated the existence of "extraordinary

circumstances," see, e.g., Harper v. Ercole, 648 F.3d 132, 137 (2d Cir. 2011) ("We conclude that

hospitalization may demonstrate extraordinary circumstances . . . depending on the facts

presented."), she offers no argument or evidence to suggest that she or her counsel exercised any

diligence, much less reasonable diligence, throughout the period she seeks to toll. See Nyack, 66

F.3d at 12. As explained by the Second Circuit, a plaintiff seeking equitable tolling must

"demonstrate a causal relationship between the extraordinary circumstances on which the claim

for equitable tolling rests and the lateness of his filing, a demonstration that cannot be made if the petitioner, acting with reasonable diligence, could have filed on time notwithstanding the extraordinary circumstances." Valverde v. Stinson, 224 F.3d 129, 134 (2d Cir. 2000); Harper, 648 F.3d at 137 (a party invoking equitable tolling must "demonstrate that [the extraordinary] circumstances caused him to miss the original filing deadline"); A.Q.C., 715 F. Supp. 2d at 461. This burden has not been discharged here.

Plaintiff seeks to toll a 45-day period immediately following accrual of her cause of action. Yet Torres offers no explanation as to why her medical condition between February 1 and March 19, 2009, rendered her unable to present her administrative claim during the 22.5 months remaining under the FTCA's limitations period. See Hizbullahankhamon, 255 F.3d at 75; Viti v. Guardian Life Ins. Co. of Am., No. 10-CV-2908 (ALC), 2013 WL 6500515, at *21 (S.D.N.Y. Dec. 11, 2013); Coleman v. Arpaio, No. 09-CV-5689 (KAM), 2010 WL 88064, at *2 (E.D.N.Y. Jan. 7, 2010). Indeed, neither Plaintiff's Complaint nor her opposition to the instant motion contain any indication that she or her counsel diligently pursued her claims during the balance of the limitations period;[14] nor can the court find any evidence of an impediment after March 19, 2009, that might justify relief from the FTCA's limitations bar. Given the fact that the extraordinary circumstances cited by Plaintiff occurred early in the limitations period and were of limited duration, the court cannot plausibly conclude that but for her medical condition between February 1 and March 19, 2009, she would have filed her administrative claim within the two-year limitations period. See, e.g., Hizbullahankhamon, 255 F.3d at 76 (affirming district court's decision not to equitably toll one-year limitations period where the party sought to toll only the first 22-days).

---

[14] In fact, Plaintiff admits she became aware of her claim as early as April 2009, approximately 21 months before the FTCA's limitations period expired.

Thus, having concluded that Plaintiff has not established that she acted with reasonable diligence throughout the period she seeks to toll, or relatedly that her medical condition caused the lateness of her filing, the court declines to equitably toll the FTCA's two-year limitations period in this case.

## IV. CONCLUSION

For the foregoing reasons, the Government's motion is GRANTED and Plaintiff's claims against the United States are DISMISSED WITH PREJUDICE.

With regard to Lutheran, who did not join in the instant motion, Plaintiff does not contest the Government's representation that Lutheran Medical Center is not a federally deemed employee of the Public Health Service. (See Gov't Mot. at 9-10 (citing 42 U.S.C. § 233(g)(1)(A).) See also Rodriguez v. United States, No. 01-CV-4975 (ILG), 2001 WL 1590516 (E.D.N.Y. Nov. 3, 2001) (recognizing Lutheran Medical Center not to be amenable to suit under the FTCA). Nor does she rebut the Government's assertions that at all times relevant to this case Dr. Karban was employed by and Shore Road was operated by the Sunset Park Family Health Center, not Lutheran. (See Gov't Mot. at 10; see also Gov't Ex. R (Karban Decl.).) Lutheran therefore does not appear to be amenable to suit under the FTCA; and even if it were, Plaintiff's claims would fail for the same reasons outlined in this opinion. As Plaintiff's Complaint does not appear to assert any claims outside the FTCA, the court does not see why Plaintiff's malpractice claim against Lutheran can or should remain in federal court. To the extent Plaintiff intended to assert pendant state law malpractice claims, there also does not appear to be any grounds for federal jurisdiction.

As such, Plaintiff is hereby ORDERED TO SHOW CAUSE by letter, within thirty (30) days from entry of this Memorandum and Order, as to why her FTCA claim against Lutheran Medical Center should not be dismissed for the reasons just outlined.

SO ORDERED.

Dated: Brooklyn, New York
September 25, 2014

s/ Nicholas G. Garaufis
NICHOLAS G. GARAUFIS
United States District Judge